**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| DARIAN HALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:23-cv-437-SEP |
| ) | |
| DANNY FRANCIS, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

Before the Court is the application of self-represented Plaintiff Darian Hall for leave to proceed in the district court without prepaying fees and costs. The Court grants the application and assess an initial partial filing fee of $7.54. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons stated below, the Court partially dismisses the complaint and directs the Clerk of the Court to issue process upon the non-frivolous portions thereof, and orders Defendants Danny Francis, Brian Davis, Jennifer Price, and David Vandergriff to respond to Plaintiff's Motion for Temporary Restraining Order within five days of the date of this Order.

**INITIAL PARTIAL FILING FEE**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action is required to pay the entire filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect, an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner forwards the monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00 until the filing fee is fully paid. *Id.*

Plaintiff has filed a certified inmate account statement for the six-month period from April 5, 2022, to October 5, 2022, which shows an average monthly balance of $37.70. Based on that information, the Court assesses an initial partial filing fee of $7.54, which is 20 percent of

Plaintiff's average monthly balance. *See* 28 U.S.C. § 1915(b)(1).

## Legal Standard

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous or malicious, or if it fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (court is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that, "if the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even pro se complaints are required to "allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); s*ee also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (federal courts not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). And "procedural rules in ordinary civil litigation" need not be "interpreted so as to excuse mistakes by those who proceed without counsel." *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## THE COMPLAINT

Plaintiff is incarcerated at the Potosi Correctional Center ("PCC") in Mineral Point, Missouri. He filed the complaint against Danny Francis (Deputy Warden); Brian Davis (Functional Unit Manager or "FUM"); Jennifer Price (Assistant Warden); David Vandergriff

(Warden); Unknown Stone (Former Sergeant); and Dennis Rulo (Correctional Officer). Plaintiff sues Vandergriff and Francis in their official and individual capacities, and sues Price, Davis, Stone, and Rulo in their individual capacities only. All of the Defendants are Missouri Department of Corrections ("MDOC") employees who work at the PCC, and Plaintiff's claims arise from events that occurred while he was incarcerated there. Condensed and summarized, Plaintiff's allegations are as follows.

On October 6, 2022, Plaintiff was referred to administrative segregation "due to significant history of engaging in self-harm and suicide attempts with another offender." Doc. [1] at 9. Due to Plaintiff's serious mental illness, he has been issued seven violations. He "has been assigned to segregation with extreme isolation conditions for 197 days and counting." *Id.*

In early December 2022, while Plaintiff was locked inside a suicide watch cell behind a steel door, Rulo sprayed Plaintiff's face with a riot can of mace "without warning by enticing Plaintiff to come closer to him." *Id.* at 10. Plaintiff was engaging in self-harm and disruptive behavior at the time, and Rulo sprayed him with mace "out of sadistic and malicious reasons to cause additional harm." *Id.* Plaintiff writes:

> Defendant D. Rulo taunted Plaintiff and was encouraging him to continue his disruptive behavior in order for the Defendant D. Rulo to mace him again and was telling Plaintiff "you will respect me sooner or later" "why are you crying? Does it hurt?" "Come on, make it more fun for me and take it like a man!"

*Id.* Stone watched from inside the security bubble while smiling and laughing, said he gave the order for Rulo to mace Plaintiff, and said that "the same orders came from Defendants Davis, Price, Francis, and Vandergriff if [Plaintiff] continue his disruptive behavior." *Id.* A mental health therapist named Barbara Lindell approved a decontamination shower for Plaintiff, but Rulo refused to allow it and left Plaintiff "burning for 5 days covered in mace," stating that Plaintiff had brought it on himself and needed to learn accountability. *Id.* at 11.

At the time of the above incident, Plaintiff was "in a mental health crisis" and was on suicide watch due to his prior attempt to hang himself. *Id.* He insists he did not threaten officers or others, and was a danger only to himself. *Id.* Vandergriff, Francis, and Price were notified of Rulo and Stone's abusive conduct, but failed to take disciplinary action or otherwise control their behavior. *Id.* Stone and Rulo "denied medical attention" for Plaintiff's head lacerations and exposure to mace. *Id.* at 13.

Plaintiff has attempted suicide on four occasions since his October 2022 transfer to PCC,

and was hospitalized on three of those occasions.  Plaintiff describes disciplinary charges that have been issued to him for disobeying orders, assaulting staff, creating a disturbance, and possession of dangerous contraband.  Plaintiff writes:

> On March 10, 2023, Plaintiff was served with disciplinary charges for d[e]struction of state property where he destroyed his suicide security smock and made a prison made noose to hang himself with.

*Id.* at 14.  Plaintiff claims all of the disciplinary charges he has received while in administrative segregation were caused by his mental illness.  *Id.*

During Plaintiff's incarceration in MDOC facilities PCC and South Central Correctional Center (SCCC), he has attempted suicide at least 25 times.  The majority of those attempts occurred at PCC while in administrative or punitive segregation.  Plaintiff was in fact transferred to PCC from SCCC for engaging in self harm and suicide attempts while in administrative segregation.  He writes:

> Since returning to Potosi CC on October 6, 2022 Plaintiff has had four severe suicide attempts resulting in staples and AED shock to his heart, CPR and breathing tubes to revive him and save him from cutting his throat open, hitting his jug[u]lar v[ei]n, swallowing razor blades and hanging himself, crushing his windpipe.

*Id.* at 18.

Ashley Skaggs and Amy Courtney, members of the MDOC medical staff, have opined that Plaintiff needs adequate mental health treatment that the MDOC cannot and will not provide, and Plaintiff has consistently requested outside help from the Department of Mental Health (DMH).  Skaggs "has brought Plaintiff[']s ongoing suicidal behavior to Defendants Davis, Price, Francis and Vandergriff's attention numerous times along with Plaintiff[']s written letters asking for help.  But Defendants refuse to do anything to help Plaintiff."  *Id.* at 16.  Plaintiff writes:

> Defendants Francis and Vandergriff refuse[] to refer Plaintiff to the Department of Mental Health stating "They no longer have a contract with DMH due to them cutting funds to save money" "And they aren't going to transfer Plaintiff anywhere nowhay [*sic*], because they will be rewarding negative behavior and they're not just going to do that period" And for Plaintiff to stop asking and accept his reality for what it is.

*Id.*

"Davis, Price, Francis, and Vandergriff consciously and knowingly place Plaintiff on

4

lockdown status in punitive segregation with full knowledge of Plaintiff[']s significant history of suicide attempts from being under such conditions and is utilizing punitive segregation as punishment for his mental illness." *Id.* at 17. These Defendants have done so despite being informed by Skaggs that segregation poses a threat to Plaintiff's mental health, and have made statements demonstrating a disregard for Plaintiff's mental health and safety.

Plaintiff has submitted repeated health service requests, and has filed a grievance requesting release from administrative segregation and access to adequate mental health treatment from the DMH. Plaintiff believes that when he files a grievance, the grievance staff calls the matter to the attention of those responsible for the matter that the grievance concerns. Plaintiff avers that Francis is responsible for arranging specialized care outside the prison, but Plaintiff has not received the specialized care his condition requires. Plaintiff states his mental health is deteriorating and his symptoms are worsening, and if he is not provided with adequate mental health care and treatment as directed by Skaggs, "he risks permanent disability or his life." *Id.* at 23.

Plaintiff identifies his injuries as head and throat lacerations, a cut to his jugular vein, and a swollen trachea that necessitated the placement of a tube to help him breathe. He claims he underwent "staples and micro surgery," and suffered "mental anguish, fright and shock, embarrassment, humiliation and mortification . . . [a]nd loss of consciousness." *Id.* at 6. He seeks declaratory and monetary relief; he also seeks injunctive relief ordering Vandergriff, Francis or their agents to arrange for a mental health evaluation by a qualified mental health professional from the DMH and a licensed psychologist with expertise in the treatment of suicidal behavior; he asks that the recommendations of such professionals be carried out; and, he seeks release from administrative segregation.

## DISCUSSION

The Court first addresses Plaintiff's individual capacity claims. Plaintiff can be understood to claim that Rulo violated his Eighth Amendment rights by subjecting him to excessive force, and Stone violated his Eighth Amendment rights by failing to intervene. Plaintiff can also be understood to claim that Davis, Price, Francis, and Vandergriff knew of Rulo and Stone's pattern of misconduct, and their failure to supervise them caused the deprivation of Plaintiff's rights. Plaintiff can also be understood to assert claims premised upon State law. The Court accepts Plaintiff's allegations as true, has given them the benefit of a

5

liberal construction, and directs the Clerk of Court to issue process on Rulo, Stone, Davis, Price, Francis, and Vandergriff.

Plaintiff can also be understood to claim that Davis, Price, Francis, and Vandergriff demonstrated deliberate indifference to his serious medical needs, in violation of his Eighth Amendment rights, because they were aware of his serious medical needs and the exacerbation of his condition in administrative segregation, but deliberately disregarded such needs by failing to ensure he received necessary mental health treatment. Plaintiff can also be understood to assert similar claims premised upon State law. The Court accepts Plaintiff's allegations as true, has given them the benefit of a liberal construction, and directs the Clerk of Court to issue process on Davis, Price, Francis and Vandergriff.

Plaintiff also alleges that Price and Francis caused him to be continually held in administrative segregation by denying him due process in prison disciplinary proceedings. In an abundance of caution, the Court allows these claims to proceed, as Plaintiff has alleged sufficient facts to demonstrate that his placement in segregation imposed an "atypical and significant hardship" upon him in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The Court now addresses Plaintiff's official-capacity claims against Vandergriff and Francis. A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). According to the complaint, Vandergriff and Francis are employed by the MDOC, a state agency. *See Walker v. Mo. Dep't of Corr.*, 213 F.3d 1035, 1036 (8th Cir. 2000) (recognizing the MDOC as state agency). The Eleventh Amendment prohibits suits for damages against the state, agencies of the state, or state officials acting in their official capacities. *Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1984). Additionally, "[s]tate officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Therefore, to the extent Plaintiff seeks damages against Vandergriff and Francis in their official capacities, such claims are dismissed. However, Plaintiff's claims for injunctive relief against Vandergriff and Francis will be allowed to proceed. Plaintiff has sufficiently demonstrated that there is a continuing state action that violates the Constitution, and that the

6

MDOC was the moving force behind the deprivation, inasmuch as he alleges Vandergriff and Francis based their denial of adequate mental health care upon an alleged lack of funding.

Plaintiff has also filed a motion seeking a temporary restraining order and preliminary injunction.  Doc. [5].  When considering whether to grant such relief, the Court evaluates:  (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.  *See Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981).

"[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration."  *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995) (citing *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).  For an injunction to issue in the prison context, therefore, "a right must be violated," and a court must determine that "a cognizable danger of future violation exists and that danger must be more than a mere possibility." *Id.* The Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id.*

In the instant motion, Plaintiff alleges that Francis, Davis, Price, and Vandergriff are responsible for providing him with adequate mental health care, and have the authority to release him from administrative segregation.  He claims he is not being provided adequate mental health care, that he is being held in administrative segregation despite its detrimental effect on his mental health, and he is being denied contact with his family, among other allegations.  The Court finds that Plaintiff's allegations are serious and that this is time-sensitive matter, and will therefore order Defendants Francis, Davis, Price, and Vandergriff to respond to the instant motion within **five (5) days** of this Court's order.  The response must include a specific response to the question of whether Plaintiff is receiving adequate mental health evaluation and treatment.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion to proceed in forma pauperis is **GRANTED**.  Doc. [2].

**IT IS FURTHER ORDERED** that Plaintiff must pay an initial partial filing fee of $7.54 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for

an original proceeding.

**IT IS FURTHER ORDERED** that Plaintiff's official capacity claims for damages against Vandergriff and Francis are **DISMISSED** without prejudice.  A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall issue process or cause process to issue on the complaint, pursuant to the service agreement the Court maintains with the Missouri Attorney General's Office, as to Defendants Danny Francis, Brian Davis, Jennifer Price, David Vandergriff, Unknown Stone, and Dennis Rulo.

**IT IS FINALLY ORDERED** that Defendants Francis, Davis, Price, and Vandergriff must respond to Plaintiff's motion for temporary restraining order and preliminary injunction within **five (5) days** of the Court's order.

Dated this 7th day of April, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE