## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| DARIAN HALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 4:23-cv-437-SEP |
| | ) | |
| DANNY FRANCIS, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM AND ORDER

Before the Court is Plaintiff Darian Hall's Motion for Preliminary Injunction.  Doc. [33].  For the reasons set forth below, the Court denies the motion, and also denies Plaintiff's earlier-filed and duplicative *pro se* motion.

### BACKGROUND

The following background is based on Plaintiff's *pro se* Complaint,[1] Doc. [1], the instant motion, Doc. [33], and the memoranda submitted by Plaintiff, Docs. [37], and Defendants, Doc. [38].  Plaintiff "has faced a lifelong struggle with his mental health."  Doc. [37] at 8.  He has been incarcerated in the Missouri Department of Corrections (MDOC) since 2016, and during that time has attempted suicide 28 times.  He explains that he averages three suicide attempts each year.  He attempted suicide on October 2, 2022, while housed in the segregation unit at South Central Correctional Center (SCCC) and was transferred to the Potosi Correctional Center in Mineral Point, Missouri (PCC) the next day.

In his Complaint, Plaintiff alleges that he was placed in segregation on October 6, 2022, "due to significant history of engaging in self-harm and suicide attempts with another offender."  Doc. [1] at 9.  He claims he was housed in administrative segregation for many consecutive months, was denied adequate mental health treatment, and was at great risk of attempting suicide.[2]  As relief, he seeks release from administrative segregation and placement in the general population, "with restoration of all rights and privileges."  *Id.* at 7.  With the Complaint, Plaintiff filed a motion for temporary restraining

---

[1] Plaintiff filed the Complaint *pro se* against Warden David Vandergriff, Deputy Warden Danny Francis, Assistant Warden Jennifer Price, Functional Unit Manager Brian Davis, Sergeant Stone, and Correctional Officer Dennis Rulo.

[2] Plaintiff asserted other claims as well, including claims of excessive force.

order reasserting his allegations.  The Court appointed counsel to represent Plaintiff.

Plaintiff filed the instant motion with the assistance of counsel.  He alleges he has been housed in administrative segregation for most of the last two years.  He writes:  "Candidly, [Plaintiff] does receive mental health services while in segregation; however, the services available to him are significantly more limited *because* of his segregation status and thus do not completely address his particular needs." Doc. [37] at 10 (emphasis in original).

Plaintiff describes negative aspects of life in the administrative segregation unit.  He states that his only human contact is with mental health professionals and the correctional officers assigned to guard him.  Most of his therapy sessions are conducted through his cell door instead of in a private room.  He is often housed in a cell without a call button and lacks access to art supplies, books, and other helpful resources.  He is particularly sensitive to sensory and environmental factors present in the segregation unit, such as loud screaming and banging, the presence of pepper spray in the air, flooding of other cells that causes waste to enter his cell, and verbal harassment from other offenders and corrections staff.

Plaintiff also describes his suicide attempts from October 2022 to April 2023.  He states that he "strongly correlates his suicidal ideation with the never-ending isolation in which Defendants force him to live," and that "despite the limited mental health treatment he can access, life in the segregation unit forces him to commonly think about suicide."  *Id.* at 14-15.  He states that his suicide attempts are often met with force and conduct violations that are punished with more time in the segregation unit, thereby trapping him in a cruel cycle.

Plaintiff has told "prison staff" about the toll administrative segregation has taken on his mental health, but his "pleas have resulted in little to no change in his circumstances."  *Id.* at 15.  He states that Mental Health Chief Ashley Skaggs brought Plaintiff's suicidal behavior to Defendants' attention many times, "warned Defendants . . . about placing Plaintiff in segregation," and said "segregation destroys Plaintiff mentally," but Defendants disregarded the warning.  *Id.* at 20-21.  Citing the affidavit that he attached to his memorandum in support of the instant motion, Plaintiff writes: "Now, Defendants are seeking to prevent [Plaintiff] from communicating with Ashley Skaggs in any manner."  *Id.* at 21 (citing Doc. [37-1] at ¶ 34).  In the relevant portion of his affidavit, Plaintiff attests that on June 19, 2023, he was "in medical recovering" after a suicide attempt, and asked Corrections Officer Hawkins to call Skaggs and ask her when he would be taken off suicide watch.  Doc. [37-1] at ¶ 33-34.  Hawkins did so and was berated by Defendant Brian Davis and told to not call Skaggs on Plaintiff's behalf.  *Id.*

Plaintiff argues that he has shown that continued segregation poses a substantial risk of more suicide attempts, and that Defendants have violated his Eighth Amendment rights.  He contends he "will suffer harm that is irreparable, if not fatal" if he "cannot escape the isolation and get full access to mental health services."  Doc. [37] at 16.  He believes he has sufficiently demonstrated that he will suffer irreparable harm; that the balance of the harms weighs in favor of granting him injunctive relief; and that the public interest weighs strongly in favor of granting him injunctive relief.  Plaintiff writes:

> The Court should find that [Plaintiff] sufficiently established the *Dataphase* factors for issuing a preliminary injunction.  Thus, the Court should grant [Plaintiff] the relief he seeks, issue an order commanding Defendants to immediately stop housing Plaintiff in the segregation unit, and relocate Plaintiff to either a general population unit or to a specialized mental health or hospital setting until this matter is tried on the merits; and commanding Defendants to provide Plaintiff with unfettered access to the available mental health care and services at PCC, including therapy sessions with a mental health provider in a private room, and for any other relief the Court deems just and proper.

*Id.* at 28-29.

Defendants oppose the motion.  They contend that Plaintiff has offered no supporting evidence from a physician, or anything other than his own opinion, that the requested relief would reduce the likelihood of irreparable harm.  They write: "Plaintiff has provided no evidence other than his own assertions that the threat of harm to him would actually be diminished if granted his requested relief . . . There is simply no basis for this Court to conclude Plaintiff would be any less likely to experience harm if the relief were granted, and an injunction in the absence of such evidence would be truly extraordinary."  Doc. [38] at 7.

Defendants note that Plaintiff now admits he regularly receives mental health care, and they claim qualified medical staff control and direct Plaintiff's treatment.  Defendants contend that Plaintiff cannot dictate the course of his treatment, and they also state that they themselves must defer to the expertise of the mental health professionals responsible for Plaintiff's care.

Defendants caution that "segregation" is not "isolation" or "solitary confinement."  Doc. [38] at 10 n.2.  Administrative segregation just means separation from the general population, and offenders in administrative segregation, including Plaintiff himself, often have cell mates.

Defendants deny preventing Plaintiff from communicating with Ashley Skaggs.  They provide the declaration of Defendant Brian Davis, who claims that his instructions to Officer Hawkins on June 19, 2023, were at Skaggs's request:  Skaggs asked him to remind Hawkins that offenders could not repeatedly summon her outside of an emergency or her normal rounds.  According to Davis, Skaggs had

3

already met with Plaintiff that day, and his intent was to prevent interference with Skaggs's duties. Davis also states that, to his knowledge, Plaintiff has received unfettered access to mental health treatment while in administrative segregation.

Defendants assert that the MDOC has robust policies and procedures in place to prevent the specific harm Plaintiff claims will occur absent relief.  Defendants describe the MDOC's procedures relating to offenders who present a suicide risk and claim they were followed for Plaintiff as recently as April and June 2023.  Pursuant to policy, mental health professionals monitor the inmates in administrative segregation at least once per week, and the administrative review committees at PCC include mental health professionals who provide input and recommendations about how segregation may impact an offender's mental health.

Defendants also describe the MDOC's procedures when there is a recommendation for a stay in administrative segregation beyond 12 months.  Those procedures include a report on the inmate's mental health needs, a current psychological assessment, and referral to a psychologist.  The MDOC also has programs designed to re-integrate inmates to general population, and PCC staff has tried to use those programs for Plaintiff.  However, Plaintiff's serious violations have necessitated his continued placement in the administrative segregation unit in order to maintain safety and security.  Defendants deny deliberate indifference to Plaintiff's serious medical needs. Defendants assert they have instead acted to safeguard Plaintiff from harm while maintaining the safety and security of others.  *Id.* at 11.

Defendants disclaim authority to direct Plaintiff's mental health care or to order him transferred to the Missouri Department of Mental Health.  They also note that Plaintiff cites no authority establishing a constitutional right to avoid exposure to prolonged administrative segregation by virtue of a psychological diagnosis.  To grant Plaintiff's motion would be against the public interest, Defendants maintain, and in the absence of a contravening medical opinion, they urge this Court to leave inmate housing decisions to the discretion of prison administration.

In reply, Plaintiff writes:  "First, Plaintiff does *not* contend that his mental health treatment is inadequate."  Doc. [39] at 2 (emphasis in original).  He argues that remaining in administrative segregation exacerbates the symptoms of his mental health diagnoses, resulting in increased risks to his life.  He reasserts that he told Defendants that "his suicide attempts and mental health crises resulted from his prolonged, seemingly indefinite stay in administrative segregation."  *Id.* at 1.  Plaintiff also reasserts his belief that being in the administrative segregation unit negatively affects his access to mental health treatment, inasmuch as most of his visits with mental health providers occur "coldly and

4

impersonally, at and separated by the cell door, usually due to lack of office space or lack of custody staff." Doc. [39] at 6.

Plaintiff asserts that his testimony and findings of other courts based upon expert opinions rendered in those cases show that Plaintiff would be less likely to experience harm if he were removed from administrative segregation. Plaintiff points to no expert opinion or recommendation from a treatment provider reaching that conclusion in his case, however. Plaintiff states that he is not asking for a specific course of medical treatment, but rather "for a carceral setting—outside of segregation—that allows him full access to mental health care, unfettered by the whims of Defendants." *Id.* at 10.

DISCUSSION

"A preliminary injunction is an extraordinary remedy." *Roudachevski v. All–American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citation omitted). When deciding whether to grant or deny preliminary injunctive relief, district courts weigh the following four factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981).

To demonstrate irreparable harm, the movant must show harm that " 'is certain and great and of such imminence that there is a clear and present need for equitable relief.' " *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023) (quoting *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013) ). "In other words, the harm must not only be 'more than the mere possibility' of irreparable harm, it also 'must be more than mere speculation.'" *Id.* "[F]ailure to demonstrate irreparable harm is a sufficient ground to deny a preliminary injunction." *Id.* "[I]n the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

Applying those standards, the Court finds Defendants' argument against injunctive relief to be well taken. Plaintiff contends that remaining in the administrative segregation unit exacerbates his mental health symptoms and makes it more likely that he will attempt suicide or otherwise harm himself, but he provides only his own opinion that he will suffer irreparable harm absent a preliminary injunction. Plaintiff admits that he receives regular mental health treatment and denies that his treatment

5

is inadequate.  But he points to no opinion of any mental health treatment provider that he should be transferred from the administrative segregation unit or another setting, receive a different course of treatment, or have access to any particular supplies.  Nothing in the current record supports Plaintiff's opinion or provides a basis to conclude that any Defendant has disregarded a mental health professional's recommendation.

Pointing to the June 19, 2023, incident involving Ashley Skaggs, Plaintiff claims that Defendants have directly prohibited mental health providers from communicating with him.  At the time of that incident, Plaintiff was receiving treatment "in medical"; he was not being denied access to care.  Doc. [37-1] ¶ 33.  And Davis has explained that his instructions to Hawkins were at Skaggs's request, and Plaintiff does not claim that Skaggs deliberately disregarded his serious medical needs.  There is simply no support for Plaintiff's claim that he was wrongfully prevented from communicating with Skaggs.  And Plaintiff has no right to receive treatment on demand from Skaggs personally.  *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (prisoners have no constitutional right to receive a particular course of treatment).

Plaintiff also complains about the circumstances surrounding his receipt of mental health care, including the fact that his therapy sessions occur through his cell door.  But he admits that he receives mental health treatment and does not claim it is inadequate.  None of Plaintiff's treatment providers has opined that he requires an accommodation such as therapy sessions in a private room or other setting.  Also, as discussed above, Plaintiff has not shown that the Defendants have wrongfully restricted his access to mental health care, or that Davis or any other Defendant wrongfully prevented him from communicating with Skaggs.  Plaintiff may disagree with the course of his treatment or believe he would receive better care in a different setting or under different circumstances.  But again, he has no constitutional right to receive a particular or requested course of treatment.  *See id.*

Plaintiff also complains that he is often housed in a cell without a call button, but he does not cite, nor is the Court aware of, any controlling precedent suggesting that the absence of a call button, by itself, is unconstitutional.  He also claims he is particularly sensitive to sensory and environmental factors present in the administrative segregation unit, such as loud screaming and banging, the presence of pepper spray in the air, flooding of other cells, and verbal harassment from other offenders and corrections staff.  But the record provides no basis to conclude that Plaintiff would be free from such factors in the general population or other carceral setting.

The Court concludes that Plaintiff has not demonstrated harm that "is certain and great and of

6

such imminence that there is a clear and present need for equitable relief," as necessary for the Court to grant him the preliminary injunctive relief he seeks. *H&R Block, Inc.,* 58 F.4th at 951 (quotation omitted). Plaintiff also provides no basis for this Court to conclude that he would be less vulnerable to harm if his requested relief were granted. Additionally, as Defendants assert, the MDOC has robust policies and procedures in place to prevent the specific harm that Plaintiff claims will occur absent relief. As noted above, "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff*, 60 F.3d at 520-21 (quotation omitted). The Court therefore denies Plaintiff's Motion for Preliminary Injunction. The Court also denies Plaintiff's earlier-filed duplicative *pro se* Motion for Temporary Restraining Order and Preliminary Injunction. Finally, the Court also denies Plaintiff's Motion to File Supplemental Memorandum, as the information contained therein would not change the Court's decision on the instant Motion for Preliminary Injunction.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction, Doc. [33], is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's *pro se* Motion for Temporary Restraining Order and Preliminary Injunction, Doc. [5], is **DENIED**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to File Supplemental Memorandum, Doc. [42] is **DENIED**.

Dated this 5th day of September, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE