UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DARIAN HALL, | ) | |
| | ) | |
| Plaintiff - Appellant, | ) | Case No. 4:23-CV-00437 |
| | ) | |
| v. | ) | |
| | ) | |
| DANNY FRANCIS; JENNIFER PRICE; | ) | |
| BRIAN DAVIS; DENNIS RULO; | ) | |
| UNKNOWN STONE; DAVID | ) | |
| VANDERGRIFF; JASON JACKOUBEK, | ) | |
| | ) | |
| Defendants - Appellees. | ) | |

## DECLARATION OF NATALIA A. OGURKIEWICZ

I, Natalia A. Ogurkiewicz, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct based upon my personal knowledge:

1. I am an attorney licensed to practice law in Missouri, Illinois, Indiana, the Eastern District of Missouri, Eighth Circuit, and multiple other federal jurisdictions.

2. I represented Plaintiff Darian Hall in connection with his appeal before the United States Court of Appeals for the Eighth Circuit and evaluation of potential related claims.

3. I received written confirmation of the attorney-client relationship from Plaintiff via Missouri Department of Corrections' Securus messaging platform because since being retained, Missouri Department of Corrections terminated legal mail. It took time to get registered and approved for the MDOC Secure.li platform. Counsel believed time was of the essence, and filed an appearance in the Eighth Circuit on or about June 3, 2026. Counsel discussed terms of representation with both Plaintiff and his wife, Britani Hall, via telephone call on multiple occasions, with the plan to obtain a signed retainer agreement as soon as practicable. Counsel had an appointment to visit Plaintiff on or about July 1, 2026, and intended on bringing a copy of the agreement for Plaintiff to sign on that date due to inmates' documented challenges accessing and printing legal mail through the new portal system. I later informed ethics counsel of this operative fact.

4. During the course of the representation, I became aware that litigation-related matters, including factual allegations, litigation strategy, evidentiary matters, witness identity, and other matters related to ongoing litigation were being discussed publicly and routinely by at least one individual associated with Plaintiff.

5. I conducted independent investigation into these matters, which revealed the following:

    a. Extensive factual allegations included in a "change.org" petition, which may or may not align with the record;

    b. Extensive substantive discussion of protected health information covered by both statute and this Court's Protective Order;

    c. Extensive allegations regarding Missouri Department of Corrections internal statements, representation, and documentation;

    d. Representations that these substantive discussions were intended to generate attention to specific factual representations against Missouri Department of Corrections, regardless of whether they align with the record;

    e. Arguments with individuals believed to be either witnesses and/or parties to pending litigation; and

    f. Repeated weaponization of Counsel and this Court's authority.

6. During my representation, I received and maintained a litigation file that included materials obtained from prior counsel, Husch Blackwell, LLP, as well as limited materials generated during my representation.

7. My review revealed that both the public discussion and materials forwarded from Husch Blackwell LLP contain documentation and information covered by the this Court's Protective Order.

8. It became clear that due to conduct that persisted following multiple corrective conversations, including those related to public dissemination and discussion of ongoing litigation and protective material, among other factors, the attorney-client relationship had irreparably degraded.

9. I gave Plaintiff notice of my intent to withdraw and the reasons therefore via phone call.

10. Prior to, I repeatedly gave Plaintiff and his associate oral and written notice that withdrawal would be forthcoming if certain persisting conduct, including but not limited to public discussions of protected material, continued.

11. Plaintiff's associate, Britani Hall, represented to my staff that the conduct would not continue. However, more public-facing discussion occurred within 24 hours of this discussion.

12. The Eighth Circuit granted my Motion for Leave to Withdraw on or about July 16, 2026.

13. Thereafter, I received persisting communication from Plaintiff and Britani Hall (purporting to be acting on Plaintiff's behalf) requesting that the protected material be released to Britani Hall, including expert reports that explicitly reference and discuss significant confidential material explicitly envisioned by Paragraph 5 of this Court's Protective Order.

14. I concluded that extensive material requested for release is covered by the Protective Order.

15. I then reviewed the entire file, categorizing each type of document, and conveyed my judgment as to whether the material contained therein was able to be disclosed. I disclosed the non-protected material via DropBox to Britani Hall.

16. I repeatedly stated that I would not violate this Court's Order, and told Plaintiff and his associate that they had the following options: (1) have successor counsel contact me

directly for quick transfer of the file, including protected materials; (2) call Husch Blackwell to find out whether prior counsel, who drafted the Order, had any particular position on the matter; (3) obtain a Court order authorizing disclosure. I repeatedly indicated that I would disclose the materials through channels that were envisioned by the Protective Order, and informed both Plaintiff and his associate that I believed the non-speculative risk of disclosure warranted extra diligence and caution.

17. I engaged in the following steps of due diligence to ensure compliance with both the Rules of Professional Conduct and this Court's Order:

   a. Reviewed the Rules of Professional Conduct, the Protective Order, and the protected materials sought.

   b. On or about Monday, May 13, 2026, I spoke with Missouri Advisory Ethics Counsel regarding the requests of both Plaintiff and Britani Hall. Missouri Advisory Ethics Counsel confirmed that in their opinion, in this case, the Protective Order operates more broadly than the duty to disclose. Counsel's opinion was consistent with my judgment at that point.

   c. I called the State at least twice to ascertain whether the State would agree to disclosure, as the Protective Order envisions. I did not receive a response.

   d. I called Husch Blackwell to ascertain whether they, as counsel who drafted the Order with the State, had a position. They did not.

   e. On or about July 15, 2026, I spoke with Michael Downey, ethics counsel. I hereby waive confidentiality of that conversation and represent that in that discussion, Mr. Downey advised that diligence exercised to this point was correct. Mr. Downey further recommended that I file a Motion for Clarification of the Protective Order.

   f. I agreed with Mr. Downey and filed the recommended Motion on the morning of July 16, 2026.

18. Since then, I received increasingly combative messages from Plaintiff via Missouri Department of Corrections' Securus Messaging Platform, including the following:

   a. "I never signed or saw an engagement letter from you. Which means this ethical thing you speak about? You do not have or follow. And You are 100% wrong with your assessment. Which I can't expect for a limited knowledgeable (sic) person on a complex case to comprehend. Best of luck to you and your 'mysterious ethics counsel' which you have not provided proof of. I have proof that you on purpose mishandled my case. Not me or my wife. You are extremely incompetent." – July 16, 2026, after issuing a Termination Letter and serving Plaintiff with a copy of the Motion via the Secure.li platform.

   b. "What you are telling me is a complete lie . . . I find disturbing that you would lie so compulsively . . . and then try to prevent me from litigating my case. . . . So unprofessional." –July 15, 2026, after I sent a message to Plaintiff and his wife explaining the reasoning I believe the material is protected, citing to explicit language and portions of the Order.

c. "Okay well I'll take this to the courts since I have a counsel trying to keep materials in my file that I have a federal protected right to have. Your confusion of the PO does not give you a right to violate my rights. So I'll be taking this to the Federal District Court." –July 14, 2026, after again reiterating I believe the materials are protected and that I must comply with this Court's order.

19. I have not outright denied transfer of the materials requested.

20. I remain willing to comply with any order entered by this Court regarding the requested materials.

21. I remain willing to transfer materials to duly retained successor counsel consistent with the Protective Order and any orders of this Court.

22. I remain willing to transfer materials to Plaintiff via the Secure.li platform upon any other manner contemplated by the Protective Order or any other order of this Court.

23. I will provide the Court any materials required to assess whether disclosure is appropriate for *in camera* review.

I declare under penalty of perjury that the foregoing is true and correct.

Natalia A. Ogurkiewicz
#72951MO

Executed: July 16, 2026